UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| P.S., | : |
|     Plaintiff, | : |
| | :    CIVIL ACTION NO. |
| v. | :    3:01cv1757 (SRU) |
| | : |
| THE BROOKFIELD BOARD OF EDUCATION, | : |
| | : |
|     Defendant. | : |

**MEMORANDUM OF DECISION**

P.S.[1] seeks review of an administrative Hearing Officer's determination that the Individuals with Disabilities Education Act ("IDEA") did not require the Brookfield Board of Education ("the Board") to reimburse P.S. for the cost of his private education. The Board argues that the Hearing Officer's decision was correct because, when P.S.'s parents unjustifiably refused to allow the Board's psychologist to evaluate P.S., they lost any right to reimbursement. P.S. responds that his parents forfeited no reimbursement rights because their refusal to make him available for an evaluation was justified. The Board is correct, as I explain below, and summary judgment will enter in its favor.

**I.   The IDEA and Connecticut's Implementation**

The IDEA provides federal remuneration for state education of disabled children, provided the responsible state has established a program that complies with federal law and regulation. Among other things, a state receiving federal assistance must adhere to certain federal standards in evaluating potentially disabled students, *see* 20 U.S.C. §§ 1412(a)(7), 1414;

---

[1] When this case began, P.S. was a minor and the case was brought on his behalf by his parent. P.S. has since reached majority and now prosecutes the case under his own name. Because the case concerns the events of P.S.'s childhood, it remains, at his request, captioned anonymously.

34 C.F.R. §§ 300.530-536, and must set up various procedural mechanisms through which parents or education planners may raise problems that arise in the child-placement process, *see* 20 U.S.C. § 1415; C.F.R §§ 300.500-529.  An important component of the required procedural safeguards is the availability of an opportunity for parents to present complaints at an impartial hearing – often called a "Due Process Hearing."  20 U.S.C. § 1415(b)(6).

Connecticut participates in the IDEA.  Its federally compliant evaluation process is set forth at Connecticut Agencies Regulations § 10-76d-9.  The process for initiating and conducting a Due Process Hearing is set forth at Connecticut Agencies Regulations §§ 10-76h-1 to 10-76h-18.

The IDEA requires the local educational agency, when conducting an initial evaluation of a possibly disabled student, to "use a variety of assessment tools and strategies to gather relevant functional and developmental information, including information provided by the parent . . . ." 20 U.S.C. § 1414(b)(2)(A); 34 C.F.R. § 300.532(b).  It may "not use any single procedure as the sole criterion for determining whether a child is a child with a disability or determining an appropriate educational program for the child . . . ." 20 U.S.C. § 1414(b)(2)(A); 34 C.F.R. § 300.532(f).

Connecticut complies with these mandates, requiring that: "Each child who has been referred and who may require special education and related services shall be evaluated . . . . The evaluation study shall include reports concerning the child's educational progress, structured observation, and such psychological, medical, developmental and social evaluations as may be appropriate . . . .  More than one evaluation procedure, instrument, or technique shall be used as the basis for placement."  Conn. Agencies Regs. § 10-76d-9.  The entity that evaluates each child

is a specially formed group, known as a Planning and Placement Team ("PPT"), ordinarily comprising, among others, school specialists and the child's parents. Conn. Agencies Regs. § 10-76d-10.

Assuming a child is found to be disabled within the meaning of the IDEA, the PPT must arrive at an Individualized Education Program ("IEP") for that child. Connecticut requires that a child's IEP be implemented as soon as possible after the PPT has met to develop the program, but, in the case of referral made during the school year, no later then 45 days from the time of referral or notice (or 60 days if the child is to be privately placed or placed out-of-district). Conn. Agencies Regs. § 10-76d-13. This time period is "exclusive of the time required to obtain parental consent." *Id.*

In accordance with federal law, Connecticut allows a parent to request a hearing regarding the "identification, evaluation, or educational placement of a child or the provision of a free appropriate public education to the child." Conn. Agencies Regs. § 10-76h-3(a). "No issue may be raised at a hearing unless it was raised at a planning and placement team meeting for the child." Conn. Agencies Regs. § 10-76h-3(g).

Parents who have exhausted the relevant state administrative proceedings may bring suit in federal court. The district court does not, ordinarily, conduct a trial of the case. Instead, the parties file the administrative record, along with supplemental evidence, if desired, and the case is decided by the court on the preponderance of the evidence in that record. 20 U.S.C. § 1415(i)(2)(B); *M.S. v. Board of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000).

The procedural mechanism by which the court ordinarily decides the case is through

cross-motions for summary judgment. Despite the use of the summary judgment mechanism, the process is effectively an appeal of an administrative decision. The court does not attempt to determine whether there are disputed issues of material fact, but rather bases its decision on the preponderance of evidence in the record. *See A.S. v. Norwalk Bd. of Educ.*, 183 F. Supp. 2d 534, 539 (D. Conn. 2002).

In reviewing the administrative body's decision, a court must take special care not "to substitute [its] own notions of sound educational policy for those of the school authorities which [it] reviews." *Board of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). The court must, instead, give "due weight" to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy. *Id.* Deference need not, however, be given to conclusions of law reached in the prior proceeding. *Muller v. Committee on Special Ed. of East Islip*, 145 F.3d 95, 102 (2d Cir. 1998); *A.S. v. Norwalk*, 183 F. Supp. 2d at 539.

## II.     Statement of Facts

### A.     Background

The relevant facts of the case, as they are set forth in the administrative record, are as follows. Almost no facts are in dispute.

In November 1998, during P.S.'s sophomore year at Immaculate High School, a private school in Danbury, Connecticut, P.S. began having difficulty functioning. His neurologist diagnosed him as having petit mal epilepsy and recommended homebound instruction. On December 8, 1998, P.S.'s parents enrolled him in the Brookfield Public Schools and requested a private instructor. The Brookfield Board of Education assented and assigned Beth Nanna as

P.S.'s instructor.

Before Nanna could begin instruction, P.S. experienced a "psychotic break" and was admitted to Yale Psychiatric Institute in a catatonic state. He was diagnosed by psychiatrists at Yale Psychiatric Institute as having schizophreniform disorder and was held for three weeks of observation and tests. Upon his discharge and on the recommendation of his doctors, P.S. entered into a daytime treatment program at the Danbury Center for Child and Adolescent Treatment Services ("CCATS"). Around the same time, P.S. began receiving homebound tutoring from Nanna, which met with some success.

On January 27, 1999, the Board notified the parents that a Planning and Placement Team meeting would be held on February 10, 1999 in order to begin to determine whether P.S. should be identified as a special education student and, if so identified, what placement would be appropriate. Among others, P.S.'s mother and Christopher Sorenson, P.S.'s doctor from CCATS, attended the meeting. The PPT determined that P.S. needed to have his medical condition and educational needs evaluated. P.S.'s mother and Sorenson requested that P.S. be placed in the ACCESS educational program run by Danbury Hospital. The PPT, however, determined that, until the evaluations were complete, P.S. should continue with homebound instruction. Before the conclusion of the meeting, P.S.'s mother signed a consent form agreeing that P.S. could be evaluated by L. Pernice, a psychologist.

It is disputed whether, at the PPT meeting, P.S.'s mother provided the PPT with a copy of P.S.'s discharge summary from Yale Psychiatric Institute. The PPT was, however, informed that P.S. had been diagnosed by the Yale Psychiatric Institute as suffering from schizophreniform disorder.

The day after the PPT meeting, P.S.'s parents, through counsel, revoked consent for P.S. to be evaluated by Pernice and requested a due process hearing. The grounds for the request were: (a) failure to timely evaluate, (b) denial of an appropriate program, and (c) denial of appropriate placement. That same day, P.S.'s parents informed Nanna that her services were no longer required because P.S. was to be placed in the ACCESS program. Shortly thereafter, P.S.'s parents placed him at ACCESS.

P.S. did well at ACCESS. In the 1999-2000 academic year – P.S.'s junior year – he began to transition back to Immaculate High School, and, by the time he graduated, he was fully mainstreamed at Immaculate High School.

B.    Procedural History

P.S.'s parents requested a due process hearing immediately after the PPT met for the first time, before P.S. had been "identified" or an IEP formulated. Attorney Justin Rosado was assigned as Hearing Officer. On March 4, 1999, the Board made a motion asking the Hearing Officer to order P.S.'s parents to allow P.S. to be psychologically evaluated. The motion was granted on April 21, 1999. P.S.'s parents did not comply. The first day of the due process hearing was held on September 1, 1999. In November 1999, the Board moved to dismiss on the ground that P.S.'s parents had not complied with the Hearing Officer's order to submit P.S. for evaluation. The hearing continued over the days of December 2, 3 and 6, 1999, and March 8 and 9, 2000. On the latter two days, the Hearing Officer reiterated that P.S.'s parents must allow him to be evaluated. They did not comply.

Over a year later, on May 16, 2001, the Hearing Officer heard legal argument on the Board's motion to dismiss and orally granted it. On July 30, 2001, he issued written findings of

fact and conclusions of law.

 The Hearing Officer dismissed P.S.'s claim, concluding that:

>The Board was within the time limits to evaluate the student. The IEP process was stymied by the parents' withdrawal of their permission to evaluate the student, one day after permission had been given.
>
>* * *
>
>Parents who, because of their failure to cooperate, do not allow a school district a reasonable opportunity to evaluate their disabled child, forfeit their claim for reimbursement for a unilateral private placement.

In reaching this conclusion, the Hearing Officer determined that there was no evidence that examination by the Board's psychologist would have harmed P.S. and, under those circumstances, the parents were required to allow the Board to evaluate P.S.

## III. Standard of Review

 The parties have filed the administrative record with the court. At the time the case began, neither side sought discovery (Briefing Schedule; doc. # 12) or asked to supplement the administrative record. Ordinarily, under these circumstances I would – as discussed above – determine on the basis of the administrative record whether the preponderance of the evidence shows compliance with the IDEA. There are, however, two peculiarities in this case's history that confuse things. First, the Hearing Officer technically granted a Motion to Dismiss, likening what he was doing to granting a Rule 12(b)(6) motion.[2] Accordingly, there might be reason to think that I am only to review his decision the way an appellate court would review a district

---

[2] The Hearing Officer's reference to the Federal Rules of Civil Procedure is confusing, but immaterial. The Connecticut Regulations provide that a Hearing Officer may dismiss a hearing for failure to state a claim on which relief can be granted. Conn. Agencies Regs. § 10-76h-18(a)(5).

court's grant of a motion to dismiss, i.e., for legal error assuming the truth of all facts the plaintiff alleged. Second, only the Board has moved for summary judgment, a fact that might indicate P.S.'s intention to supplement the record.

With respect to the first issue, though the Hearing Officer did cite to Rule 12(b)(6), what he actually did appears nothing like a typical ruling on a motion to dismiss. The Hearing Officer heard all of P.S.'s evidence over four days and then issued a ruling containing both *findings of fact* and conclusions of law. Moreover, the Hearing Officer noted that

> [f]ull opportunity to adduce evidence, examine and cross-examine witnesses and make argument was give [sic] to all parties. The hearing officer had full opportunity to examine and interrogate all parties relative to all matters including witnesses, reports, program examination, test results and all other materials presented.

It appears the Hearing Officer, despite the label used, actually made a ruling, not of failure to state a claim, but of insufficient evidence, i.e., a ruling more akin to one under Rule 50[3] than under Rule 12(b)(6).

With respect to the second issue, the parties clarified at oral argument that, even though only one side filed a motion for summary judgment, both sides anticipate that I will conduct a typical review of an IDEA record and base my decision on the preponderance of the evidence before me.

In sum, because, regardless of the label used, the Hearing Officer did hear evidence and reach the merits of the case; because the administrative record on which he based his decision is before me; and because the parties agree that this case is to follow the typical procedure in an

---

[3] Rule 50 also has an analogue in the relevant Connecticut regulations. A Hearing Officer may dismiss a hearing for failure of any party "to sustain its burden after presentation of evidence." Conn. Agencies Regs. § 10-76h-18(a)(6).

IDEA case, I see no reason to deviate from the standard of review set forth in this circuit's IDEA cases. Accordingly, because neither side has chosen to supplement the record, I base my ruling on the preponderance of the evidence presented at the administrative hearing, giving appropriate deference to the Hearing Officer's determinations.

**IV.    Discussion**

P.S. seeks reimbursement for the cost of his unilateral placement in private school. He argues that (1) the Board failed to provide him with a public placement, thereby denying him his right to a free appropriate public education, and (2) his parents' private placement was appropriate. The Board responds that the parents were unjustified in withholding consent to an evaluation and consequently forfeited their right to reimbursement. I agree.

A.    <u>Law Governing Right to Reimbursement</u>

Parents dissatisfied with a school board's proposed placement of their child may, at their own risk, unilaterally place their child in a private school.[4] Such action is at their own risk in the sense that they are "entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act." *Florence County School District v. Carter*, 510 U.S. 7, 15 (1993) (emphasis in original). This rule was made clear in the 1997 amendments to the IDEA, *see* 20 U.S.C. § 1412(a)(10)(C)(ii), which allows a hearing officer or court to order reimbursement for unilateral

---

[4] Both the IDEA and Connecticut's implementation require that, during the pendency of administrative or judicial proceedings, the child remain in his current placement, or – if currently in private school – be enrolled in public school. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.514; Conn. Agencies Regs. § 10-76h-17. This rule only prevents school administrators, and not parents, from altering a child's placement during a pending administrative proceeding. *Burlington v. Department of Ed. of Massachusetts*, 471 U.S. 359, 373 (1985).

placement.

The IDEA also sets out specific reasons why reimbursement may be reduced or denied, including "if, prior to the parents' removal of the child from the public school, the public agency informed the parents, through the notice requirements described in section 1415(b)(7) of this title, of its intent to evaluate the child (including a statement of the purpose of the evaluation that was appropriate and reasonable), but the parents did not make the child available for such evaluation." 20 U.S.C. § 1412(a)(10)(C)(iii)(II).

### B.     Failure to Make P.S. Available For Evaluation

There is no dispute in this case that the Board properly notified P.S.'s parents of its desire to evaluate him. (Plaintiff's Memorandum of Law at 17). P.S. contends that his parents could not have forfeited their right to reimbursement by refusing to consent to an evaluation because the Board had no right[5] to conduct the refused evaluation in the first place. Specifically, P.S. argues that his parents were justified in withholding consent to the Board's psychological evaluation because (a) the Board had no right to conduct a psychological evaluation prior to identifying P.S., (b) the Board's psychologist was not qualified, and (c) the proposed evaluation risked harming P.S.

---

[5] P.S. also spends a good deal of time in his brief explaining why the Board had no *need* to examine him. That is beside the point. The only question is whether the Board was *entitled* to examine him, and it was. "[A] school system may insist on evaluation by qualified professionals who are satisfactory to the school officials." *Dubois v. Connecticut State Bd. of Educ.*, 727 F.2d 44, 49 (2d Cir. 1984). That P.S.'s parents may have believed the tests unnecessary is not germane. The Board was entitled to have its professional examine P.S. Of course, if the results of that examination led to an improper IEP, that could have been challenged, but there is simply no authority to support the proposition that a parent's disagreement about the need for a particular test justifies refusing consent.

       1.     *Evaluation Prior to Identification*

P.S. argues that the Board was required to identify him – which he claims it could have done solely on the basis of his Yale discharge form – before it was permitted to conduct evaluations that were relevant to formulating an IEP, such as the proposed psychological evaluation.

There are a number of problems with this argument. First, there is no indication in any of the statutes that a PPT is required to identify a child before conducting evaluations that may aid in formulation of the IEP. Second, the Yale discharge alone – even assuming the disputed fact that it was given to the PPT – could not have formed the basis for an identification. The IDEA is clear that "the local educational agency shall – . . . not use any single procedure as the sole criterion for determining whether a child is a child with a disability." 20 U.S.C § 1414(b)(2)(B); *see also* Conn. Agencies Regs. § 10-76d-9(b)(2). Third, psychological evaluation is relevant to identification. "Each board of education shall ensure that a *complete evaluation study* is conducted for each child referred who may require special education . . . . The evaluation study shall include reports concerning the child's educational progress . . . and such *psychological*, medical, developmental, and social evaluations as may be appropriate." Conn. Agencies Regs. § 10-76d-9(a) (emphasis added).

       2.     *Qualification of Board's Psychologist*

There is no evidence supporting P.S.'s contention that the Board's proposed evaluator was not qualified. P.S.'s argument seems to be that, because the Board's psychologist was only a psychologist and not a psychiatrist, she was indisputably incompetent to make a psychiatric evaluation. Even if true, this shows nothing. One of the requirements of the IDEA is that the

administrative body determine a student's educational ability and needs. 20 U.S.C. § 1414(a)(1)(B)(ii). Connecticut's statutes more specifically note that this may include psychological evaluation. Conn. Agencies Regs. § 10-76d-9(a) ("The evaluation study shall include reports concerning the child's educational progress, structured observation, and such psychological, medical, developmental and social evaluations as may be appropriate"). There is no evidence that the Board's psychologist was anything other than amply qualified to perform a psychological evaluation.

        3.     *Risk of Harm to P.S.*

The last, and most serious, contention made by P.S. is that his parents legitimately feared that he would be harmed by the proposed evaluation. Whether a legitimate fear for a child's health can excuse a parent from the need to consent to an evaluation is an unanswered question in this Circuit. The Board urges me to adopt the position of the Fifth Circuit, holding that there is no "mental health" exception to a school district's right to evaluate a child. *Andress v. Cleveland Independent School District*, 64 F.3d 176, 178 (5th Cir. 1995). P.S. counters that it is entirely in keeping with the spirit of the IDEA to provide an exception to an educational agency's right to evaluate in cases where such evaluation might harm the child. In support of his position, P.S. notes that the IDEA already provides an exception to certain notice requirements if compliance "would likely result in physical or serious emotional harm to the child." 20 U.S.C. § 1412(a)(10)(C)(iv)(II). As it turns out, decision of this case does not require me to resolve this dispute.

There was some testimony at the hearing indicating that an improper examination might have harmed someone in P.S.'s condition; there was no evidence that the Pernice, the proposed

evaluator, was not a qualified psychologist or that an examination by her would have been the kind that would have caused harm.[6] Moreover, the Hearing Officer found – based on the parents' testimony – that the actual reason the parents refused consent was because they were concerned that the Board's psychologist would not be impartial and might make a recommendation they did not like.

    If there is an exception to the Board's right to evaluate a child, it requires more of a showing than was made here.  There is quite simply no evidence that Pernice's evaluation was likely to harm P.S.  Even the most generous reading of the record could only support the finding that (a) an inappropriate evaluation *could* have harmed P.S. and (b) P.S.'s parents were concerned that Pernice's evaluation *might* be inappropriate.  Moreover, the Hearing Officer – whose opinion I am bound to accord deference, particularly because he was in a position to evaluate the witnesses' credibility – concluded that the parents' true concern was that Pernice would not be impartial.

    In short, based on the preponderance of evidence in the record, I agree with the Hearing Officer that Pernice's evaluation was not likely to cause harm to P.S.

---

[6] There is certainly no indication that such a concern was ever raised to the PPT.  That fact, in and of itself, might bar the claim; an issue not raised to the PPT cannot be raised in a subsequent hearing.  Conn. Agencies Regs. § 10-76h-3(g).

V.   **Conclusion**

Because the Board was entitled to perform the requested evaluation, P.S.'s parents lost their right to reimbursement by failing to make P.S. available for that evaluation. Consequently, the Hearing Officer was authorized to deny reimbursement.[7] Of course, he was also permitted merely to reduce the amount of compensation, but he deemed that amelioration inappropriate. I have no reason to disagree with his determination.

The defendant's motion for summary judgment (doc. # 26) is GRANTED. The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31st day of January 2005.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[7] There is no occasion to reach the alternative ground argued by the Board, that the failure to comply with the Hearing Officer's order in and of itself justified dismissal.